## In re HOLZMAISTER.

### (Circuit Court, S. D. New York. May 11, 1894.)

CUSTOMS DUTIES—CLASSIFICATION—"SCHMASCHEN" GLOVES.

Ladies' gloves, 14 inches or less in extreme length, manufactured from the skins of stillborn or immature kids, imported from Germany, described on the invoice as "schmaschen, low quality," costing from 14.50 to 15.25 marks per dozen, were properly dutiable as "schmaschen" gloves at $1.75 per dozen pairs, under Schedule N, par. 458, of the tariff act of October 1, 1890, and not as "ladies' kid," at $3.25 per dozen pairs, under the same schedule and paragraph, and were not liable to the additional duty of $5 per dozen pairs, imposed by the first proviso of the said paragraph, and assessed upon them by the collector, in addition to the duty of $3.25 per dozen pairs.

Appeal by the collector of customs for the port of New York from a decision of the board of United States general appraisers reversing the decision of the collector of said port upon the classification for customs duties of certain ladies' gloves imported into said port in the month of October, 1892, upon which gloves the said collector assessed duties at the rate of $3.25 per dozen pairs as "ladies' kid," and $5 per dozen pairs additional under Schedule N, par. 458, of the tariff act of October 1, 1890, and the first proviso in said paragraph contained, which, omitting provisions not involved in this action, is as follows:

"458. * * * Ladies' and children's schmaschen of said length or under, one dollar and seventy-five cents per dozen. * * * Ladies' and children's kid of said length or under, three dollars and twenty-five cents per dozen: * * * provided, that all gloves represented to be of a kind or grade below their actual kind or grade shall pay an additional duty of $5 per dozen pairs: provided, further, that none of the articles named in this paragraph shall pay a less rate of duty than fifty percentum ad valorem."

Against this classification and imposition of the additional duty as above, the importer protested, claiming (1) that the merchandise was commercially "schmaschen" gloves, and dutiable at $1.75 per dozen pairs, under said paragraph 458 of the tariff act, (2) or, under the same paragraph, at 50 per cent. ad valorem, and (3) that the character of the gloves was not misrepresented; and that the additional duty did not apply. The case came before the board of United States general appraisers, on the application of the importer, under the so-called "Customs Administrative Act" of June, 1890, and testimony was taken in behalf of the importer, and also by the government, before the said board, which testimony was contradictory, as to the trade meaning, at the time of the passage of the tariff act, of the word "schmaschen," as applied to gloves in the markets of this country, although the weight of testimony appeared to be that the term as used in the trade applied chiefly to gloves made from the skins of stillborn lambs, but that the designation "kid schmaschen" was recognized in the trade as applying to gloves made from the skins of stillborn kids. The evidence was almost, if not quite, unanimous that the gloves involved in the present importation were produced from the skins of stillborn or immature kids. On this testimony the board of United States general ap-

praisers found as facts (1) that "schmaschen" does not exclude gloves of kid origin; (2) that the gloves in question were not commercially known as "kid" gloves; (3) that they are "schmaschen" gloves,—and the board thereupon sustained the protest of the importer, and overruled the assessment of duty by the collector. The government appealed the case into the circuit court by petition under the said customs administrative act, and further evidence was taken in the circuit court before one of the general appraisers appointed by the court as referee. The government produced the testimony of a number of glove manufacturers and trade witnesses tending to show that the term "schmaschen" gloves in the trade referred chiefly, if not entirely, to gloves made from the skins of stillborn or immature lambs, although these witnesses admitted that a small proportion of "kid slinks" or immature kids might come and be included in a lot of "schmaschen" gloves. The trade testimony offered on both sides was to the effect that the kid glove of commerce was made from the skins of young kids, most of the witnesses considering that the kid should be from one month to six weeks old, while others thought the minimum age of the kid might be a week. The importer produced before the referee the testimony of a large number of trade witnesses, all of whom testified that the merchandise in question would be considered as coming within what the trade recognized as "schmaschen" gloves; that this term, in the trade, included gloves made from the skins of stillborn kids as well as from the skins of immature lambs, although all the witnesses admitted that the proportion of lamb "schmaschens" was greatly in excess of the kid "schmaschens," several witnesses admitting on cross-examination that 95 per cent. of "schmaschens" were of lamb origin, while one or two of the importer's witnesses contended that they had seen as high as 25 or 30 per cent. of "kid slinks" in a lot of "schmaschens." None of the importer's trade witnesses would admit that the importation in question would be known in the trade as "kid gloves" of any kind, but they all called the merchandise "kid schmaschens." Every one of the importer's witnesses, however, admitted on cross-examination that he would not accept a delivery of the 371½ dozen gloves covered by the invoice in question as a good delivery of "schmaschen" gloves. The witnesses all admit that the trade expected to receive, for "schmaschens," gloves of stillborn lamb origin, but that a small proportion of so-called "kid schmaschens" would be received without affecting a lot composed chiefly of lambskins. It also appeared uncontradicted in the testimony that the meaning of the word "schmaschen" in the German language, irrespective of trade designations, included the skins of all stillborn animals used in the making of gloves. On the trial in the circuit court it was urged by the United States attorney that the term "schmaschen" gloves in the trade signified chiefly and primarily, gloves made from the skins of stillborn or immature lambs, and that the "kid slink" or "kid schmaschen" was an exception, and did not control the meaning of the word "schmaschen" in the trade, which appeared to cover commercially only gloves of lamb origin; and that, as a consequence, the gloves in this

importation not being commercially "schmaschen" gloves, but being admittedly made of the skins of immature kids, had been represented upon the invoice on which the importer's entry was made as of a kind or grade below their actual kind or grade, and consequently came within the purview of the proviso imposing the additional duty of $5 per dozen pairs. The importer's counsel contended that the term "schmaschen," in trade, included kid "schmaschens," which were made from the skins of stillborn or immature kids, although such kid "schmaschens" were admittedly far less numerous than the "schmaschens" made from immature lambskins; and that, in any event, the term "schmaschen," as understood in the German language, was broad enough to cover gloves both of kid and lamb origin. The court reserved its decision, and subsequently handed down the following brief opinion affirming the decision of the board of general appraisers, and sustaining the contention of the importer.

Henry C. Platt, U. S. Atty., and James T. Van Rensselaer, Asst. U. S. Atty., for the collector and the United States.

Sullivan & Cromwell (Edward B. Hill, of counsel), for the importer.

WHEELER, District Judge (after stating the facts). Although "schmaschen" gloves are so often of lamb origin that this term is indicative of that origin, it is not universally so, nor far enough so to exclude kid origin. This leaves room for calling these gloves of kid origin "schmaschen" gloves without exposing them to an additional high duty for representing them to be of too low a grade. The judgment of the board of appraisers is affirmed.